UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


DAMIAN FITZGERALD MILLER,

                    Petitioner,

vs.                              Case No.  2:07-cv-685-FtM-29DNF
                                 Case No.  2:03-cr-74-FtM-29DNF

UNITED STATES OF AMERICA,

                    Respondent.
_____


## OPINION AND ORDER

_____This matter comes before the Court on petitioner Damian Fitzgerald Miller's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #230)[1] filed on October 22, 2007.[2]  The United States filed its Response in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 (Cv. Doc. #7) on December 27, 2007.  Petitioner filed a Response to Respondent's Opposition (Cv. Doc. #10) on January 25, 2008.

_____

[1]The Court will make references to the dockets in the instant action and in the related criminal case throughout this Opinion and Order.  The Court will refer to the docket of civil habeas case as "Cv. Doc.", and will refer to the underlying criminal case as "Cr. Doc."

[2]Petitioner filed an identical motion on November 5, 2007 (Cv. Doc. #6).  This will be dismissed as redundant of the original motion.

**I.**

On June 25, 2003, a federal grand jury in Fort Myers, Florida filed a twelve-count Indictment (Cr. Doc. #39) naming petitioner Damian Fitzgerald Miller (petitioner or Miller) and four other defendants. Petitioner was charged in Count One with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine; in Count Six with using and carrying a firearm and possession of a firearm in furtherance of a drug trafficking crime; in Count Eleven with possession of a firearm by a convicted felon; and in Count Twelve with possession of a firearm by an illegal alien. After a jury trial, petitioner was convicted of all four counts (Cr. Doc. #113) and sentenced to a total of 188 months imprisonment, followed by 60 months imprisonment (Cr. Doc. #143). Petitioner's convictions and sentences were affirmed in United States v. Paisley, 178 Fed. Appx. 955 (11th Cir. 2006).

The factual background of the case was summarized by the Eleventh Circuit:

> This case arises out of a government-created reverse sting operation in which an undercover government agent, Bureau of Alcohol, Tobacco and Firearms Special Agent Richard Zayas, posed as a disgruntled courier for a Colombian drug cartel. Zayas represented that he was looking for persons to assist him in robbing his employers and initiated a plan to rob his employer's fictitious "stash house" supposedly housing 20 to 30 kilograms of cocaine and large amounts of cash.
>
> At Zayas' request, a confidential informant ("CI") introduced Zayas to Rohan McKay, an individual suspected of being involved with home invasion robberies in Florida. Zayas informed McKay that the stash house was

guarded by two men, at least one of whom was armed, and contained 20 to 30 kilograms of cocaine and large amounts of cash. McKay joined with Zayas and the CI to rob the stash house. In discussions regarding details of the robbery, it was decided that McKay would secure a "crew" to assist in robbing the stash house of the cocaine and cash. It was also planned that McKay, his "crew," and the CI were to meet Zayas on May 30, 2003, at a Super 8 Motel in Naples, Florida, from which they would leave to rob the stash house.

Needing a crew to help rob the stash house, McKay called on the services of a friend McKay knew had experience in this kind of crime to assist him in recruiting "experienced people" to help carry out the robbery. That friend called on Appellant Paisley. Paisley met twice with McKay to go over the details of the robbery. McKay testified at trial that he told Paisley about the plans to rob the stash house, specifically stating that they would steal about "30 kilos of coke" and "about a couple hundred thousand in cash." Paisley agreed to participate in the robbery. Paisley brought two of his associates, Appellants Miller and Jones, to these two initial meetings with McKay. During both meetings, Miller and Jones stayed in another vehicle while Paisley discussed the details of the robbery with McKay. McKay testified he never discussed the robbery details with Miller and Jones.

The morning after Paisley met with McKay, McKay and the CI met with Paisley and the three other appellants, Miller, Jones and Allen. After stopping at a nearby Home Depot for "tie straps" to use as handcuffs, the six then drove to Naples, Florida in order to meet Zayas at the Super 8 Motel parking lot. McKay and the CI led in his car, and the four Appellants followed in Paisley's van. Upon arrival at the motel, Paisley pulled in near the motel office where Appellant Jones left the van and went inside the motel lobby, engaging in tactics federal agents testified were consistent with "counter surveillance."

While Jones was "casing" the lobby, Paisley parked the van close to Zayas, who was already parked at the motel. Once Paisley was parked, Zayas got out of his car and went to the van to discuss the robbery plans with Paisley, Miller, and Allen. Zayas specifically told the three that there would be two men at the stash house, that there were 25 to 30 "keys of coke," and explained

-3-

that when they got there, one of the two men at the stash house would go back to get the cocaine while the other would stay with Zayas. Zayas finally stated, "we're going to split it even, right? Is that cool with all you guys?" No one in the van protested, acted surprised, or asked for clarification. Zayas looked at each occupant and confirmed that each one was "straight" with the plan.

After confirming Paisley, Allen, and Miller were "straight" with the plan, Zayas walked toward the motel lobby and encountered Appellant Jones walking toward the van. Zayas asked if Jones was "with these guys," and then told Jones the robbery plan-that there would be two guys at the house, that one guy had a gun, the other did not, and that "there's 20 to 25 keys of coke in there." Zayas asked Jones if he was "cool" and stated, "we're splitting the coke even, bro." Jones answered "all right."

Immediately after Zayas's conversation with Jones, law enforcement agents moved in to arrest McKay and the four Appellants. As the agents moved in, Appellant Allen attempted to flee but was brought down to the ground with rubber bullets. A loaded firearm fell from Allen's waistband, and agents seized a two-way radio. Agents also seized a two-way radio from Paisley along with a knife. Agents seized loaded handguns from both Jones and Miller. A search of the van revealed multiple guns, ammunition, and a blue duffel bag containing flex cuffs and duct tape.

McKay pled guilty and testified at trial for the government against Paisley, Miller, Allen, and Jones. A jury found all Appellants guilty as charged.

Paisley, 178 Fed. Appx. at 957-58.

Petitioner's petition for a writ of *certiorari* was denied by the United States Supreme Court on October 30, 2006. Miller v. United States, 127 S. Ct. 538 (2006). Petitioner has filed a timely motion under 28 U.S.C. § 2255 alleging claims of ineffective assistance of counsel and errors by the court during trial and sentencing.

## II.

The legal principles concerning ineffective assistance of counsel are well settled.  The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  See also Rompilla v. Beard, 545 U.S. 374, 380 (2005); Wiggins v. Smith, 539 U.S. 510, 521 (2003); Williams v. Taylor, 529 U.S. 362 (2000).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).  This judicial scrutiny is "highly deferential."  Id.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 689-90.  An attorney is not ineffective for failing to raise or preserve a meritless issue.  Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).

The same deficient performance and prejudice standards apply to appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Roe v. Flores-Ortega, 528 U.S. at 476-77.  If the Court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal.  If the omitted claim would have had a reasonable probability of success on appeal, then the deficient performance resulted in prejudice.  Joiner v. United States, 103 F.3d 961, 963 (11th Cir. 1997).  Nonmeritorious claims which are not raised on direct appeal do not constitute ineffective assistance of counsel.  Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1144-45 (11th Cir. 2005).

The other applicable legal principles will be discussed below as necessary to address the specific issues.

## III.

### A.

In Ground One, petitioner alleges that his attorney provided constitutionally ineffective assistance by failing to properly investigate and adequately prepare any sufficient defenses or affirmative defenses to the charges in the Indictment.  Petitioner asserts that the object of the conspiracy alleged in Count One was "a disadvantageously unfair and completely inaccurate misrepresentation of the facts presented at trial, . . ."  (Cr. Doc. #1, p. 5(b).)  Petitioner argues that the trial evidence established that the object of the conspiracy was not to possess

with intent to distribute or the distribution of cocaine, but rather to commit a home invasion-type robbery which could have been prosecuted under the Hobbs Act, 18 U.S.C. § 1951. Petitioner also argues that the evidence related to splitting the cocaine they would rob and distribute evenly among themselves did not satisfy "distribute" within the meaning of 21 U.S.C. § 841(a), but rather was a reference to the split and distribution of the proceeds from the robbery. Further, petitioner argues that there was no evidence that he or his co-defendants were ever involved in past drug distribution activities, or that their intent in the indicted venture was to possess with intent to distribute cocaine, or that they ever expressed any particular preference regarding the share of the proceeds being cocaine or currency. Petitioner argues that since his counsel failed to make any of these challenges to the nature of the charges brought in the Indictment, how the facts at trial related to the charges, or the government's repeated misleading characterizations of the evidence, counsel provided ineffective assistance. (Doc. #1, pp. 5(a)-(e).)

There was no ineffective assistance of counsel with regard to counsel's failure to challenge the conspiracy charge in the Indictment. In general, an indictment is sufficient if it (1) sets forth the elements of the offense in a manner which fairly informs defendant of the charge he or she must defend, and (2) enables defendant to enter a plea which will bar future prosecution for the same offense. Hamling v. United States, 418 U.S. 87, 117 (1974);

United States v. Poirier, 321 F.3d 1024, 1028 (11th Cir. 2003).
The Indictment in this case complies with these requirements, and
there was no basis on which counsel could have reasonably
challenged Count One, or any count, of the Indictment.

Petitioner argues that there was insufficient evidence to
convict him of the drug conspiracy. Petitioner raised the issue of
sufficiency of evidence at trial on direct appeal. The Eleventh
Circuit reviewed the matter *de novo* and concluded that the evidence
was sufficient to support petitioner's conviction for conspiracy to
possess with intent to distribute five kilograms or more of
cocaine. Paisley, 178 Fed. Appx. at 958. Prior disposition of an
issue on direct appeal generally precludes further review in a
subsequent § 2255 proceeding. United States v. Nyhuis, 211 F.3d
1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052,
1056 (11th Cir. 1994), cert. denied, 514 U.S. 1112 (1995). Nothing
in the present case would allow petitioner to re-litigate the issue
of sufficiency of the evidence already resolved by the Eleventh
Circuit.

Petitioner's argument in his Reply that the Eleventh Circuit
did not squarely address the sufficiency of the evidence of his
intent (Cv. Doc. #10, pp. 1-2, 3-5) is simply incorrect. The
Eleventh Circuit stated that an element of the offense was the
intent to distribute five kilograms or more of cocaine, Paisley,
178 Fed. Appx. at 958, and then stated: "With these principles in
mind, and when viewed in the light most favorable to the

government, the evidence in the record is sufficient to uphold each of Miller's, Jones's and Allen's convictions for conspiracy to possess with intent to distribute five kilograms or more of cocaine." Id. at 959. After highlighting certain evidence, the Eleventh Circuit continued: "In addition to the evidence stated above, the evidence specific to Appellant Miller justifies the Court's conclusion that the evidence is sufficient to establish Miller's guilt beyond a reasonable doubt." Id.

Petitioner also alleges there was a variance because Count One charged a drug conspiracy instead of a home invasion robbery conspiracy. A variance occurs when the facts proved are different from the facts contained in the indictment. United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990); United States v. Gold, 743 F.2d 800, 813 (11th Cir. 1984). To establish that a variance is material, and therefore fatal to a conviction, a defendant must show that a variance did occur and that he suffered substantial prejudice as a result. United States v. Roberts, 308 F.3d 1147, 1156 (11th Cir. 2002); United States v. Chastain, 198 F.3d 1338, 1349 (11th Cir. 1999). In this case there was no variance. As the Eleventh Circuit has determined, there was sufficient evidence to convict petitioner of the drug conspiracy charged in Count One.

The record reflects that defense counsel did put forth a defense. In opening statement, counsel told the jury that petitioner had no participation in any of the events until the very end, and that there would be no evidence of his participation in

-9-

the crimes charged.  (Cr. Doc. #189, pp. 141-143.)  Counsel cross-examined the government's primary witnesses with the same theme, that petitioner was not guilty of the charged offenses.  Thus, counsel elicited from the undercover officer that petitioner was not involved until the day of the arrest and petitioner did not speak to the undercover officer in the van or possess a visible firearm.  (Cr. Doc. #190, pp. 255, 272-73.)  Counsel also elicited from the cooperating co-defendant Rohan McKay that McKay never saw petitioner until the day of the arrest, never talked with petitioner on the telephone, did not talk to petitioner on the day of the arrest, and had no plan or agreement with petitioner.  (Cr. Doc. #192, pp. 652-56.)  Counsel's closing argument similarly focused on petitioner's lack of involvement in the alleged offenses.  (Id. at 879-88.)  Petitioner himself continued this theme at sentencing.  Petitioner's sole statement to the Court at sentencing was: "I have one thing to say.  I know I'm innocent. I'm not guilty.  That's it."  (Cr. Doc. #195, p. 25.)

Petitioner fails to identify any of the "government's repeated misleading characterizations of the evidence" which were not challenged by his attorney.  Therefore, petitioner has not shown any ineffective assistance of counsel in this regard.  In any event, characterizing the evidence as supporting a drug conspiracy was not a mis-characterization.  There is no requirement that actual cocaine exist in order to establish a drug conspiracy.

United States v. Sanchez, 138 F.3d 1410 (11th Cir. 1998); United States v. Ciszkowski, 492 F.3d 1264, 1271 (11th Cir. 2007).

**B.**

In Ground Two, petitioner alleges his attorney provided constitutionally ineffective assistance by failing to properly request a multiple conspiracy jury instruction where the evidence supported a finding of more than one conspiracy. Petitioner argues that the evidence establishes he was not present and did not participate in the initial meeting with the undercover agent, two subsequently recorded telephone conversations, or the two subsequent meetings with the undercover agent. The meeting petitioner did attend, he argues, provides insufficient evidence against him or his co-defendants as to the charged drug conspiracy, as opposed to a home invasion type robbery. (Cr. Doc. #1, p. 5(f)-(i).)

As discussed already, the Eleventh Circuit has found that there was sufficient evidence that petitioner and his co-defendants entered into the unlawful agreement charged in Count One of the Indictment. Additionally, the record reflects that a multiple conspiracy instruction was requested on petitioner's behalf. Petitioner's attorney filed a pretrial motion requesting that he be allowed to automatically join in any motion or objection by co-defendants' counsel unless he specifically opted out of the motion or objection. (Cr. Doc. #94.) The Court granted this motion, and applied it to all counsel so that unless counsel opted out they

-11-

were deemed to have adopted the motions and objections made by co-counsel. (Cr. Doc. #189, p. 4.)  Counsel for a co-defendant did request a multiple conspiracy jury instruction, to which petitioner's attorney did not opt out.  (Cr. Doc. #192, pp. 825-26.)  For this reason the request was deemed to have been made by all defendants, including petitioner.  In light of this request, there is no factual basis which supports a claim of ineffective assistance of counsel as to the multiple conspiracy jury instruction request.

### C.

In Ground Three, petitioner alleges that his trial attorney provided constitutionally ineffective assistance by failing to object or otherwise preserve for appeal the issues related to his due process and jury trial guarantees.  Specifically, petitioner argues that counsel failed to object on the basis that petitioner had only agreed to participate in a Hobbs Act type home invasion robbery in violation of 18 U.S.C. § 1951, and that there was never any evidence presented that petitioner and the others agreed to the drug conspiracy charged in the Indictment.  (Cv. Doc. #1, p. 5(i).)

As discussed above, there is no merit to the argument that there was never any evidence presented that petitioner and the other co-defendants agreed to the drug conspiracy charged in the Indictment.  Indeed, the evidence has been found sufficient to establish that petitioner and his co-defendants engaged in the drug

conspiracy as charged after a *de novo* review by the Eleventh Circuit. Additionally, counsel <u>did</u> argue the lack of sufficient evidence. The Eleventh Circuit's conclusion also establishes that petitioner did more than only agree to participate in a Hobbs Act home invasion robbery. Counsel was not ineffective in failing to pursue a meritless argument to the contrary.

**D.**

In Ground Three, petitioner also asserts that the district court impermissibly based its sentence, at least in part, on factors which had not been proven beyond a reasonable doubt to the jury or alleged in the Indictment, and imposed a sentence beyond the maximum penalties otherwise allowable from the facts found by the jury alone. Petitioner also argues that appellate counsel failed to raise these issues on appeal. (Cv. Doc. #1, pp. 5(j), 6(a).) Similarly, in Ground Six petitioner alleges the district court erred by imposing an enhanced sentence that exceeded the maximum punishment otherwise lawfully allowable based solely on the facts pled in the Indictment and submitted to the jury. Petitioner argues that the Court improperly denied most of his sentencing objections and incorrectly determined that he should be held accountable for between 21-30 kilograms of cocaine. Petitioner argues that other factors considered by the court were not pled in the Indictment, submitted to the jury, determined beyond a reasonable doubt, or admitted by petitioner. This, petitioner

argues, rendered petitioner's sentence unreasonable and
unconstitutional and an impermissible variance and constructive
amendment of the Indictment.   (Cv. Doc. #1, pp. 6(e)-(h).)
Petitioner essentially argues that this was constitutional error
under Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely v.
Washington, 542 U.S. 296 (2004), and United States v. Booker, 543
U.S. 220 (2005).

As the Presentence Report indicates, Counts One, Eleven and
Twelve were "grouped" for the purposes of the Sentencing
Guidelines.   While petitioner was convicted by the jury of
conspiracy involving "five kilograms or more" of cocaine (Cr. Doc.
#113), the sentencing court determined that petitioner was
responsible for 20-30 kilograms of cocaine (Cr. Doc. #195, p. 6).
Based upon this quantity, petitioner's Base Offense Level was 34.
The Presentence Report scored petitioner as a career offender,
resulting in a Total Offense Level of 37 and a Criminal History
Category of VI.   Defense counsel objected that one of the
convictions was not a qualifying predicate offense and, after
hearing argument, the Court agreed.   (Cr. Doc. #195, pp. 10-18.)
This returned petitioner's Total Offense Level to 34 and made his
Criminal History Category III, with a resulting Sentencing
Guidelines range of 188 to 235 months.   Count Six carried a
statutory mandatory consecutive 60 months imprisonment. Petitioner
was sentenced to 188 months as to Count One, and 120 months as to
Counts Eleven and Twelve (the statutory maximum), with the

-14-

sentences to run concurrently with one another. (Cr. Doc. #195, p. 26.) Petitioner was sentenced to 60 months imprisonment as to Count Six, to be served consecutively to Counts One, Eleven, and Twelve. (<u>Id.</u>)

Under <u>Booker</u>, "any fact, other than the fact of a prior conviction, that increases the defendant's sentence *beyond the prescribed statutory maximum* must be admitted by the defendant or proved to the jury beyond a reasonable doubt." <u>United States v. Houston</u>, 456 F.3d 1328, 1340 (11th Cir. 2006)(citing <u>Booker</u> and <u>Apprendi</u>)(emphasis added), <u>cert. denied</u>, 127 S. Ct. 2148 (2007). <u>See also</u> <u>United States v. Sanchez</u>, 269 F.3d 1250, 1268 (11th Cir. 2001)(en banc), <u>cert. denied</u>, 535 U.S. 942 (2002). The Court can still make findings of fact under the advisory Sentencing Guidelines based upon the preponderance of the evidence after <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>. <u>United States v. Chau</u>, 426 F.3d 1318, 1323-24 (11th Cir. 2005). In this case, the Court properly determined the Sentencing Guidelines range after determining the quantity of drugs to be attributed to petitioner and sentenced him within that range. There was ample evidence to support the sentencing court's determination as to the quantity of drugs attributable to petitioner in the conspiracy, even if no drugs actually existed in this reverse sting. <u>United States v. Chirinos</u>, 112 F.3d 1089, 1103 (11th Cir. 1997).

Petitioner also argues the court erred in not granting a three level downward adjustment for acceptance of responsibility. (Cv. Doc. #1, p. 6(h).)  Petitioner never accepted responsibility, maintaining even at sentencing that he was not guilty.  Thus, there was no basis for an adjustment under Sentencing Guidelines § 3E1.1(a) for acceptance of responsibility.

While petitioner makes reference to other sentencing factors which were considered but not submitted to the jury, he identifies none.  The only other factors impacting petitioner's Sentencing Guidelines calculation were his prior convictions.  Consideration of prior convictions not listed in the indictment or admitted by a defendant is not Booker error.  Booker, 543 U.S. at 244; Almendarez-Torres v. United States, 523 U.S. 224, 226-27 (1998); United States v. Martinez, 434 F.3d 1318, 1323 (11th Cir.), cert. denied, 548 U.S. 918 (2006); United States v. Glover, 431 F.3d 744, 749 (11th Cir. 2005).  The Court finds there was no variance or constructive amendment of the Indictment, and no ineffective assistance of appellate counsel.

**E.**

As part of Ground Three, petitioner argues that counsel provided ineffective assistance by failing to object to the improper sentence and thereby preserve the issue for appeal. Petitioner asserts that at the time of his trial, sentencing, and appeal the constitutionality of the federal Sentencing Guidelines had repeatedly been called into question, and therefore a competent

attorney would have raised the issue if only to preserve the issue for appeal.  (Doc. #1, pp. 5(j)-6(a).)

The United States Supreme Court upheld the constitutionality of the Sentencing Guidelines in <u>Mistretta v. United States</u>, 488 U.S. 361 (1989).  Petitioner's attorney was not constitutionally ineffective in failing to object to the statutory <u>Booker</u> error because an attorney is not ineffective for failing to anticipate a change in the law.  <u>Funchess v. Wainwright</u>, 772 F.2d 683, 691 (11th Cir. 1985); <u>Pitts v. Cook</u>, 923 F.2d 1568, 1573-74 (11th Cir. 1991); <u>Bajorski v. United States</u>, 276 Fed. Appx. 952, 954 (11th Cir. 2008).  Petitioner was sentenced on January 30, 2004.  Certiorari in <u>Booker</u> was granted on August 2, 2004, <u>United States v. Booker</u>, 542 U.S. 956 (2004), but a grant of certiorari does not change the law.  <u>Schwab v. Sec'y, Dep't of Corr.</u>, 507 F.3d 1297 (11th Cir. 2007).  <u>Booker</u> was decided on January 12, 2005.

**F.**

In Ground Four, petitioner argues that the cumulative effects of his attorney's overall deficient performance deprived him of the effective assistance of counsel and a fair trial.  Petitioner asserts that his attorney repeatedly failed to properly object during trial to the admission of certain evidence that had no bearing on the charges, was meant only to inflame the passions of the jury and prejudice petitioner, and was irrelevant, unresponsive, or speculative and uncertain.  Petitioner specifically cites only a few examples.

-17-

Petitioner argues that his attorney failed to object: when an agent responded that "I guess U.S. Immigration" keeps the computer system with regard to alien records (Cr. Doc. #192, p. 664, ll. 14-15); to agent testimony with regard to some of the contents of petitioner's alien file explaining the impact of a certain document (id. at 676, ll. 2-16); to reference to an appointment letter previously referred to by a co-defendant's counsel (id. at 700, ll. 12-15); and to a conversation between the Court and counsel at the jury instruction charge conference (id. at 818, ll. 11-22). (Cv. Doc. #1, p. 6(a)- (b).)  The charge conference did not take place in front of the jury, and the Court finds no deficient performance in failing to object to the other questions identified by petitioner.

**G.**

In Ground Five, petitioner argues that the Court erred by failing to properly instruct the jury to consider and determine the drug amount as an essential element of the charged offense. Specifically, petitioner argues that because the instructions given only required the jury to determine whether five kilograms or more were involved in the conspiracy, the court's jurisdiction for sentencing purposes was limited to finding only five kilograms. Petitioner argues that use of any greater amount for purposes of increasing petitioner's sentence beyond that allowed under the applicable Offense Levels offended petitioner's Fifth Amendment Due Process protection, the Fifth Amendment Grand Jury guarantees, and

-18-

the Sixth Amendment Jury guarantees.  The sentence imposed was therefore improper because more than five kilograms was attributed to petitioner.  Additionally, petitioner argues this constructively amended the indictment.  (Cv. Doc. #1, pp. 6(c)-(e).)

It is clear that the amount of drugs is not an element of a drug offense.  United States v. Sanchez, 269 F.3d 1250, 1268 (11th Cir. 2001)(en banc).  Where the statutory maximum sentence is increased by a quantity of drugs above a certain threshold amount, a jury must decide whether that threshold amount has been proven beyond a reasonable doubt.  The precise amount of drugs above that amount, however, remains to be determined by the court applying a preponderance of the evidence standard.  In this case, the jury was instructed as to the five kilograms or more, and returned a verdict finding five kilograms or more.  Therefore, there was no error in the jury instructions.

There was no proper basis for counsel to challenge the drug quantity at sentencing or on direct appeal, and an objection that the case involved no cocaine at all was not legally sound.  None of petitioner's rights were violated, and therefore this issue is without merit.

**H.**

In Ground Seven, petitioner argues that the Court erred by imposing multiple punishments under different criminal statutes for virtually the same criminal conduct in violation of the Fifth Amendment's Double Jeopardy clause.  Petitioner argues that Counts

-19-

Six (with using and carrying a firearm and possession of a firearm in furtherance of a drug trafficking crime), Count Eleven (possession of a firearm by a convicted felon), and Count Twelve (possession of a firearm by an illegal alien) do not allow the imposition of separate sentences. (Cv. Doc. #1, pp. 6(h)-(l).)

A double jeopardy claim is reviewed as a question of law. United States v. Dowd, 451 F.3d 1244, 1251 (11th Cir. 2006), cert. denied, 127 S. Ct. 335 (2006). Imposition of the consecutive sentence for the § 924(c) conviction in Count Six did not violate the Double Jeopardy Clause because Congress specifically authorized such additional punishment. Dowd, 451 F.3d at 1251-52; United States v. Strickland, 261 F.3d 1271, 1273 (11th Cir. 2001), cert. denied, 534 U.S. 1099 (2002). Petitioner received concurrent sentences as to Counts Eleven and Twelve. Therefore, no error occurred in the sentencing.

Accordingly, it is now

**ORDERED**:

1. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, and to Correct, Sentence By a Person in Federal Custody (Doc. #1) is **DENIED** as to all claims for the reasons set forth above.

2. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, and to Correct, Sentence By a Person in Federal Custody (Doc. #6) is **DISMISSED** as a duplicate copy of Doc. #1.

3.   The Clerk of the Court shall enter judgment accordingly and close the civil file.   The Clerk shall place a copy of the civil Judgment in the criminal file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___9th___ day of January, 2009.


JOHN E. STEELE
United States District Judge


Copies:
AUSA Michelland
Damian Fitzgerald Miller